# *United States District Court*

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

UNITED STATES OF AMERICA

V.

OSWALDO EDGAR RENFRUM,
EUGENE DESIRE MIERAK,
ORLANDO JANSEN,
MARCELL VERSCHUREN

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4242-SNOW

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __October 19, 2000__ in _____Broward_____ County, in the ___Southern___ District of _____Florida_____ defendants, OSWALDO EDGER RENFRUM, EUGENE DESIRE MIERAK, ORLANDO JANSEN, and MARCELL VERSCHUREN (describe)

did conspire to distribute a quantity of 4-methyl-2, 5-dimethoxyamphetamine (commonly known as MDMA or Ectasy), a Schedule I controlled substance,

in violation of Title __21__ United States Code, Section __s 846, 841(a)(1)__

I further state that I am a(n) __Special Agent, DEA__ and that this complaint is based on the following facts:

Official Title

Please see attached affidavit.

Continued on the attached and made a part hereof: [x] Yes [ ] No

Signature of Complainant
Brian J. Shanahan, Special Agent
Drug Enforcement Administration

The Court finds probable cause.
Sworn to before me, and subscribed in my presence,

October 20, 2000                           at  Fort Lauderdale, Florida
Date                                            City and State

~~LURANA S. SNOW~~ BARRY SELTZER
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer            Signature of Judicial Officer

## AFFIDAVIT

I, Brian J. Shanahan, being duly sworn, depose and state:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have served in this capacity for approximately two years. Immediately before that, I served as a New York State peace officer for approximately eight years. As a Special Agent with DEA, my primary responsibility includes investigating violations of Title 21 of the United States Code.

2. I have a Bachelor of Science degree in criminal justice from Northeastern University in Boston, Massachusetts. For my position as a Special Agent with DEA, I successfully completed training at the DEA Academy at Quantico, Virginia. For my position as a New York State peace officer, I successfully completed training from the New York State Court Officers' Academy in New York City, New York. I have also participated in in-service and on-the-job training in the area of investigating drug violations.

3. Since 1998, I have conducted or assisted senior special agents on numerous investigations involving violations of Title 21, United States Code. During the course of my employment I have conducted investigations utilizing surveillance techniques, interviewing third parties, executing search warrants, and executing arrest warrants.

4. I have been working on a criminal investigation with other agents from DEA, as well as officers from the Palm Beach Sheriff's Office. The information detailed below comes from information provided to me by the federal and state law enforcement personnel involved in this investigation and my own personal investigation. Since this affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of the complaint.

5. In or about early October, 2000, a confidential source[1] ("CS") contacted the Palm Beach Sheriff's Office. The CS informed the Palm Beach Sheriff's Office that he had received a telephone call from a citizen of Holland by the name of Orlando Jansen, who stated he would be arriving in the United States from Holland on October 17, 2000, at Miami International Airport. Jansen told the CS that approximately 400,000 tablets of 4-methyl-2,5-dimethoxyamphetamine, a controlled substance commonly referred to as MDMA or Ecstasy, had previously been shipped to South Florida. The CS said Jansen indicated that there was a lot of work to be done and that he looked forward to working with the CS. Additionally, Jansen informed the CS that a man known to the CS as Oswaldo would be arriving in the United States on another flight and would be assisting Jansen in selling the MDMA. Finally, Jansen agreed to front the CS approximately 50,000 tablets of MDMA, and if the CS was able to distribute the MDMA quickly, Jansen and his associates would front the CS another 50,000 tablets. The CS had been arrested on an MDMA charge earlier in 2000 and was cooperating with the Palm Beach County Sheriff's Office in order to obtain a more lenient sentence in his drug case.

6. At the direction of law enforcement officers, on October 17, 2000, the CS went to Miami International Airport, under the surveillance of law enforcement officers. As the CS had indicated, Jansen arrived from Holland and the CS met him and drove him to the Best Western Hotel in Miami Beach, Florida. During the drive to the hotel, at law enforcement's direction, the CS tape-recorded his conversations with Jansen concerning the upcoming MDMA deal.

7. The CS parked the car in the parking lot across the street from the hotel. Jansen told

---

[1] The confidential source will be referred to in the male gender, although this reference is not intended to convey that the confidential source is in fact a male.

the CS that his friends were staying in this hotel and that he would check to see whether they were there. The CS joined Jansen in the hotel. Shortly thereafter, agents observed the CS and Jansen meet with two black males, one white male, and one Arabic male on the beach near the hotel. Law enforcement later identified these individuals as Eugene Mierak, Oswaldo Renfrum, Marcell Verschuren, and Eyob Michel. The CS informed law enforcement officers that the group discussed the MDMA deal that was being planned. Jansen spoke in English with the CS, but spoke Dutch with Mierak, Renfrum, Verschuren and Michel. The CS does not understand Dutch. In later conversations, however, Mierak and Renfrum spoke in English to the CS about the MDMA deal.

8. After the meeting, Jansen and the CS entered the CS's vehicle and traveled to the Hampton Inn in Coconut Grove, as law enforcement officers surveilled. Jansen rented a room and directed the CS to rent a car and deliver the car to Jansen at the Hampton Inn. The CS informed law enforcement officers that he had previously conducted business in this way with Jansen and his associates and that on that prior occasion, Jansen provided the CS with approximately 120,000 tablets of MDMA.

9. On October 18, 2000, law enforcement officers observed the CS as he delivered the rental vehicle to Jansen as directed. Also under law enforcement surveillance, Jansen drove the rental vehicle to a parking lot on 16th Street, off of Alton Road in Miami Beach. The CS, driving his own vehicle, followed Jansen. The two parked their cars and walked to the Clay Hotel located nearby. Agents observed the CS meet with Renfrum and Jansen. The CS informed agents that the three were going to travel to Fort Lauderdale to meet the person who controlled the release of the MDMA pills. That person was identified as Mierak.

10. Agents followed Jansen and Renfrum in the rental vehicle, as well as the CS, who was traveling in his own vehicle, to the Holiday Inn Express on North Federal Highway in Fort Lauderdale. There they observed Jansen, Renfrum, and the CS meet with Mierak. According to the CS, the four made plans to execute the first transaction involving 50,000 tablets of MDMA. Mierak told the CS the owners of the pills were inside the Pure Platinum. DEA agents observed Mierak go inside the Pure Platinum and meet with Verschuren and two other males. Mierak then exited the Pure Platinum and told the CS the owners would not front the pills to the CS, but that the CS first had to deliver $50,000 in order to obtain possession of the 50,000 tablets of MDMA.

11. On October 19, 2000, Jansen and Renfrum arrived at the Holiday Inn Express on North Federal Highway in Fort Lauderdale in the rental vehicle, eventually leaving it at a Publix parking lot across the street from the Holiday Inn Express. Mierak was in the Publix parking lot where he could keep the rental vehicle under surveillance. Jansen met with the CS and both proceeded to the rental vehicle, gave the CS the keys to the rental vehicle and told the CS the pills were in the trunk. The CS opened the trunk and observed a black and red bag containing what was later determined to be approximately 50,000 tablets of MDMA. Jansen asked where the money was and the CS said his guy had the money at a nearby location. Jansen then walked back to the Holiday Inn Express.

12. The CS received telephone calls on his cellular telephone from Jansen, Renfrum and Mierak, all three men demanding the money that was to be paid for the MDMA. DEA agents had not obtained $50,000 for the CS to pay for the MDMA. DEA agents then arrested Mierak in front of the Publix store, and arrested Jansen, Renfrum and Verschuren at the Holiday Inn Express where they had been observed meeting during the drug negotiations. DEA agents

also seized the MDMA tablets. I believe, based upon the packaging and odor of the tablets that they are, in fact, MDMA tablets.

BRIAN J. SHANAHAN
Special Agent
Drug Enforcement Administration

Subscribed to and sworn to me
this 20th day of October, 2000.

LURANA S. SNOW BARRY SELTZER
UNITED STATES MAGISTRATE JUDGE